HEIRS OF ENRIQUE DELGADO ORTEGA, Plaintiffs and Appellants, v. HEIRS OF JOAQUÍN VILLAMIL, Defendants and Appellees.

No. 4699. Argued December 17, 1929.—Decided November 28, 1930.

*Luis Muñoz Morales* for appellants.  *José Martínez Dávila* for appellees.

MR. JUSTICE ALDREY delivered the opinion of the Court.

Enrique Delgado and his wife, Gertrudis Jiménez, purchased in 1903 three city lots, located in the ward of Santurce of this city and having the following areas: one of them comprised one and one-fourth acres (*cuerdas*); another measured 25.80 meters in front by 62.70 meters deep, and the other measured 62.70 meters in front by 62.70 deep.

On March 23, 1905, Delgado and his wife sold by public deeds the three lots to Joaquín Villamil for the same price they had paid for them, namely, $175, $70, and $140, respectively, the notary before whom the deeds to Villamil were executed certifying that the latter had delivered in his presence the purchase price. In 1913 Villamil segregated a parcel of land from one of the lots and sold it to Nolasco Escalera. In 1914 Villamil sold the three lots to Pedro Bolívar Alvarez for a larger sum than he had paid for them, or $250, $100, and $200, respectively, and in 1918 he bought them back from Bolívar for the same price for which he had previously sold them to the latter. In 1921, or sixteen years after Villamil had purchased from Delgado, the former sold three parcels from the lot last mentioned above to the Municipality of San Juan for a total price of $12,573.77. Eight years after such sales, on February 14, 1929, Enrique

Delgado died, and subsequently Villamil sold other parcels for $6,207.42. From 1911 until 1916 or 1917, Enrique Delgado worked as a bookkeeper in the commercial establishment of Villamil. The latter paid the taxes on the said lots after he purchased them, and it does not appear that Delgado paid any part of such taxes.

Nineteen years after the sales made by Delgado and his wife, the heirs of the former brought suit against Joaquín Villamil, who died without answering the complaint, which his heirs opposed. That complaint alleges that the sale to Villamil was simulated and was induced by Villamil, who made Delgado and his wife believe that those properties were in danger of being lost if they continued in the name of Delgado, and offered to procure their sale on a commission basis; whereupon the title to the said properties was transferred to him without any consideration, and he was commissioned to sell them, it being agreed that he could retain one-third of the purchase price as his commission. It is further alleged that Villamil has sold several parcels from one of the said lots for the aggregate price, according to the complaint, of $16,856.25, but which we find actually to have been larger, and has appropriated to himself the whole of that sum without delivering to the plaintiffs the two-thirds thereof. On the strength of these and other allegations, the plaintiffs pray that Villamil, now substituted by his heirs, be adjudged to return to them the remainder of the lot from which he made the said segregations and the other two lots, and to pay to them two-thirds of the proceeds of the sales made, together with damages in the amount of $10,000. The heirs of Villamil resisted these claims and, after a trial, judgment was rendered against the plaintiffs, who have taken the present appeal, at the hearing of which the appellees did not appear.

The first two grounds of appeal refer to the evidence and are closely related; hence, they can be disposed of together. They are as follows: First: The court erred in holding that

the deeds of sale executed on March 23, 1905, before notary Tomás Mott by Enrique Delgado and Gertrudis Jiménez in favor of Joaquín Villamil were not simulated. Second: The court erred in holding that the private documents in the handwriting of Villamil are insufficient to overcome the presumption established by the public deeds and to show that the properties in controversy had been conveyed to Villamil in trust or *fidei-commissum*.

The appellants do not contest the authenticity of the deeds of sale from Delgado to Villamil; what they claim is that, notwithstanding the recitals of the instruments, the said sales were simulated, and that they have proved such simulation.

In order to impugn the sales evidenced by those deeds, the plaintiffs introduced the testimony of the widow of Enrique Delgado and two private instruments written by Villamil. Their other witnesses and documents relate to other matters, which are of no importance in the determination of the action herein and of this appeal.

The widow of Delgado testified that his family and that of Villamil maintained a close friendship; that in 1905, by reason of a cerebral hemorrhage suffered by her husband, Villamil proposed to them a transfer to him of the title to those lots, to which they agreed fearing some action on the part of Delgado's creditors in case the land should greatly increase in value; that the titles were transferred to him, and that on the day before the deeds were executed Villamil wrote to her the following letter:

"Dear Tula: I think it is not only advisable to send me the deeds but also to transfer the title. It is indifferent to me whether the transfer is made to me or to any of your friends, but I say to you again that it is quite advisable to make the transfer as soon as possible lest any enemy of yours should take a fancy to those lots. I tell you all this because I know that there is someone who is seeking to collect some debt which Enrique seems to owe him, and it would be regrettable that for that reason the lots could not be sold to advantage.

"I did not say anything to you last night about this because 1

did not think it well to worry Enrique, but you may consult with him in any way you think best. If you do, write me as soon as possible or, if you prefer, come and see me and I will explain to you how the matter stands.

"If the transfer is made to me, I will execute to you a private instrument in which I will state the portions to which you are . entitled and I will bind myself to deliver to you your shares when the sales are made.

"If possible, give me an answer at once so as to have the deeds drawn up and take them to you for you to sign them right away so that the lots be protected.

"This is all for the present. Yours sincerely, J. Villamil. March 22, 1905."

Subsequently to the recording of those deeds of sale in favor of Villamil, the latter sent to the widow of Delgado the following documents:

"Dear Tula: Pardon me for not sending you the enclosed letter until today, as the instruments had not been delivered to me. I am, yours sincerely, Joaquín Villamil. April 29, 1905."

"San Juan, P. R., April 29, 1905. Mr. E. Delgado and Mrs. Gertrudis Jiménez, Santurce. My very dear friends: With regard to the land which I now own in Santurce, in this municipal district, I hereby acknowledge in your favor the sum of two hundred and sixty-two dollars, which I shall pay when the said land shall have been sold. It is understood that all taxes and other expenses shall be for your account and mine. Very truly yours, Joaquín Villamil."

In the testimony of Delgado's widow there is nothing to the effect that the sale was made so that Villamil should sell the lots and keep one-third of the purchase price as commission.

The contents of every public instrument are presumed to be true, and to overcome this presumption such a strong and clear proof is required as will enable a court to resolve the conflict without any vacillation, for in case of doubt the recitals of the public instrument must always prevail, as was held by this court in *Hernández* v. *Fernández*, 17 P.R.R. 103. We shall be guided by that rule in deciding the instant case.

Delgado's widow does not deny in her testimony that the

sale from her and her husband to Villamil had been for a consideration or that the consideration had been delivered by the purchaser in the presence of the notary. She confines herself to stating that the titles were transferred to Villamil owing to the friendship existing between both families, for the purpose of avoiding any claim on the part of her husband's creditors and to await an increase in the value of the lots. But if such was the case, it can not be understood how Delgado could have allowed seventeen years to elapse without claiming from Villamil the return of the lots or the proceeds of the sales made by him, which amounted to a large sum of money, realized four years after ceasing to be employed by Villamil as bookkeeper. Besides, the testimony of that lady does not agree with the theory of the complaint, according to which the lots were conveyed to Villamil for him to sell and keep one-third of the purchase price as commission; to which theory also applies the above observation that Delgado himself had failed to claim any share in the proceeds of the sales made by Villamil.

The only thing which raises some doubt as to the truth of the recitals and stipulations contained in the deeds of 1905 is the private writing, in which Villamil suggested to Delgado's wife the advisability of transferring the lots to him or to some other person before the enemies of her husband made any attempt to seize them, as up to that time it did not seem that any real sale was contemplated. But the existence of such a communication is not a sufficient justification for concluding definitely that the proposal had not been modified before the execution of the deeds evidencing by their terms a real sale.

Nor does it appear with certainty from the terms of the other private document, that Villamil had acknowledged to Delgado and his wife a two-thirds undivided interest (condominio) in those lots, as what appears from the wording used is that he acknowledged in their favor the sum of $262, which he promised to pay as soon as the lots were sold, which

sum is not exactly the equivalent of the two-thirds of the purchase price involved in their sale to Villamil. The acknowledgment of a claim in the lots for a fixed sum, although approaching the two-thirds of the price for which they were sold to Villamil, limited Delgado's right to that specific amount and can not be considered as the acknowledgment of a two-thirds undivided interest, since this would imply that Delgado was entitled to receive a greater or smaller sum, represented by two-thirds of the value of the lots at a given time. In the absence of other proof, those words can be construed only as the acknowledgment of a debt. On the other hand, it was stated in the aforesaid document that all taxes and other expenses were to be borne by Delgado and Villamil; but the latter showed that he paid the taxes, and the plaintiffs failed to produce any evidence to the effect that they had paid any part of such taxes or of any expenses.

Perhaps there is actually involved a simulated sale, designed for the purpose of preventing Delgado's creditors from enforcing their credits, or perhaps the sales were in earnest on the understanding, as stated in the complaint, that upon the lots being sold Villamil would retain one-third of the purchase price as his commission and turn the balance over to Delgado; but we agree with the lower court that the evidence introduced by the plaintiffs is not so strong and clear that it might be concluded therefrom, without any hesitation, that the attacked deeds do not represent an actual sale from Delgado and his wife to Villamil, or that the latter subsequently acknowledged in favor of the former the undivided interest which they claim. If what the plaintiffs claim to have happened did actually occur, they now suffer the consequences of having tried to elude their creditors.

The first two grounds of the appeal having been disposed of in the manner above stated, we do not deem it necessary to pass upon the other two grounds, which relate to errors alleged to have been committed by the lower court in holding

that Villamil acquired the lots with just title and in good faith and therefore that the action prosecuted had prescribed, and in holding that the claim for damages had also prescribed.

The judgment appealed from must be affirmed.

Mr. Justice Hutchison and Mr. Justice Texidor dissented.